IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WENDY S.,[1] | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 25-cv-1829-RJD[2] |
| COMMISSIONER of SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

**Procedural History**

In January 2022, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income, alleging an onset date of January 3, 2019. Tr. 25. After holding an evidentiary hearing on November 28, 2023, ALJ Steve Hanekamp denied the application on February 23, 2024. Tr. 25, 40. On January 6, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 1. Plaintiff filed the instant appeal with this Court.

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

**Applicable Legal Standards**

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404; the process contained in the regulations for determining SSI eligibility is identical in all aspects relevant to this case, so the Court will refer to the DIB regulations for conciseness. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work? 20 C.F.R. § 404.1520(a)(4). An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability. *Id*.

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or

substitute its own judgment for that of the ALJ. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted). However, the undersigned does not act as a rubber stamp for the Commissioner. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence. *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

**<u>The Decision of the ALJ</u>**

The ALJ followed the required five-step analytical framework. He determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 3, 2019. Tr. 27. He determined that Plaintiff had the following severe impairments: degenerative disc disease, mild osteoarthritis of the knees, bilateral trochanteric bursitis, obesity, diabetes mellitus type II, restrictive lung disease, depression, and anxiety. Tr. 27. However, he found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the applicable regulations. Tr. 19.

The ALJ determined that Plaintiff had the following RFC:

> [She can] perform sedentary work [as defined in the regulations] except no climbing ladders, ropes or scaffolds, no exposure to whole body vibration, no exposure to dangerous unprotected heights or dangerous unprotected moving machinery, occasional balancing, kneeling, crouching, crawling, stooping, and climbing ramps and stairs, no concentrated exposure to pulmonary irritants, extreme cold, extreme heat, or humidity. She can perform simple routine tasks, with occasional changes in duties, no strict production standards e.g., no jobs performed on a piece rate basis, and no rigorous production pace, e.g., no jobs performed on an automated line where the worker cannot control the line speed.

Tr. 31. The ALJ concluded that Plaintiff was not capable of performing past relevant work, but there are jobs that exist in significant numbers in the national economy that the claimant can

perform. Tr. 38-39.

**Issues Raised by Plaintiff**

Plaintiff contends that the ALJ erred in formulating her RFC because he did not consider the effects of her fatigue, and that he failed to identify and resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").

**The Evidentiary Record**

The following summary of the record is tailored to Plaintiff's arguments.

**1. Medical records**

Plaintiff was taking a Vitamin D supplement as early as October 2019 and "restart[ed]" monthly Vitamin B12 injections in January 2021. Tr. 512, 750-751. Plaintiff presented to her primary care doctor on June 15, 2023, requesting lab work for vitamins B and D. Tr. 2280, 2280. She reported fatigue. Tr. 2285. Her physician ordered routine blood work and tests for vitamins B and D and folate. Tr. 2285. It is unclear whether Plaintiff's levels of Vitamin B and D and folate were checked at that time, but her comprehensive blood count reflected some abnormal results, e.g., high white blood cell count, low hemoglobin. Tr. 2240. Regarding the high white blood cell count, Plaintiff's doctor noted to repeat the complete blood count in one week and consider hematology referral. Tr. 2279. It is unclear if the blood test was repeated the following week.

Plaintiff returned to her primary care doctor on September 25, 2023, reporting fatigue. Tr. 2251. She reported that it was "ongoing for 1-2 months." Tr. 2256. Plaintiff reported that she thought her vitamins were not "doing anything because she is so fatigued all the time." Tr. 2251. Her doctor noted the fatigue had an "unclear etiology, possibly multifactorial" and to

"check routine lab work." Tr. 2256. Her thyroid, folate, and Vitamin B12 levels were normal. Tr. 2343, 2344. Her CBC results again included some abnormal values, e.g., her white blood cell count was high. Tr. 2347. The record does not contain any additional notes by her primary care physician after these blood tests were performed.

**2. Evidentiary Hearing**

Plaintiff testified that her lower back pain makes standing, walking, and sleeping painful. Tr. 54. She spends approximately 50% of her time reclined instead of sitting or standing due to her back pain. Tr. 55, 56. She stays in bed, three days a week. Tr. 54. Her depression and anxiety also prevent her from getting out of bed. Tr. 55. She typically naps from 12pm-3pm every day. Tr. 54. Because of her diabetes, she wakes up in the middle of the night to use the restroom, "probably at least once." Tr. 56. She spends her days "online, watching television." Tr. 56, 57. She "might cook a microwave meal" and walks to the end of her driveway to get the mail. Tr. 57.

The ALJ posed the following hypothetical to the vocational expert:

> …a younger individual. 12th grade education. Past work history, sedentary as the DOT defines it. No ladders, ropes, or scaffolds. No dangerous, unprotected heights. No dangerous, unprotected moving machinery. No whole-body vibration. Balancing, kneeling, crouching, crawling, stooping, ramps and stairs, all occasional. No concentrated exposure to pulmonary irritants, extreme heat, extreme cold, or humidity. Simple routine tasks. No strict production standards. For example, no work paid on a pace-rate basis. No rigorous production pace. For example, no work on an automated line where the worker would not be able to control the line speed. And change in duties would be occasional at maximum.

Tr. 59. The vocational expert testified that the individual could work as a hand assembler at sedentary level (at least 20,000 jobs in the national economy), machine tender at the sedentary

level (at least 39,000 jobs in the national economy), and table worker at the sedentary level (at least 50,000 jobs in the national economy). Tr. 59-60. The vocational expert testified that the DOT "or other publications" does not address rigorous pace production and so the expert's basis for opining that Plaintiff could perform the pace of these occupations was based upon her "education and experience, which includes well over 25 years of doing on-site job analysis, placement services, and reviewing the current vocational research and literature." Tr. 61.

**Analysis**

First, Plaintiff argues that the ALJ "failed to provide a sufficient explanation for omitting the effects of fatigue from the RFC." This argument is not persuasive. The ALJ considered Plaintiff's testimony regarding the time that she spent in bed each day, as well as the physician's notes in which Plaintiff reported fatigue. Tr. 28, 30, 31. The ALJ identified the most recent note by Plaintiff's primary care practitioner in which the doctor noted that the cause of Plaintiff's fatigue was unknown but possibly multifactorial. Tr. 28. The ALJ also noted that Plaintiff used a CPAP machine regularly. Tr. 28. To the extent Plaintiff's other conditions (e.g., degenerative disc disease, depression, lung disease, and diabetes) cause (in whole or in part) Plaintiff's fatigue, the ALJ fully evaluated those conditions and Plaintiff's capabilities despite those conditions. Tr. 31-35. The ALJ then explained his reasoning in finding that the RFC did not contain greater restrictions. Tr. 36-38. Overall, there is a logical bridge between the evidence and the RFC. Plaintiff's argument regarding her fatigue is simply an invitation to reweigh the evidence, which the undersigned will not do.

Plaintiff also argues that the ALJ failed to reconcile discrepancies between the DOT and the vocational expert's testimony. Defendant bears the burden of showing that a significant

number of jobs are available that Plaintiff can perform. *Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020); 20 C.F.R. § 404.1560(c)(2). The ALJ relied upon the testimony of the vocational expert to meet this burden. If there is a discrepancy between the vocational expert's testimony and the DOT, the ALJ "must obtain a reasonable explanation for the apparent conflict." *Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016).

Plaintiff points to the DOT description of table worker: one who "examines squares of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." DICOT 739.687-182 (G.P.O.), 1991 WL 680217. Plaintiff contends that the reference to the conveyor seems to conflict with the vocational expert's testimony that the table worker position does not involve work in an "automated line where the worker would not be able to control the line speed." In response to this argument, Defendant correctly notes that the DOT's definition of table worker does not preclude the worker from controlling the conveyor belt speed. To adopt Plaintiff's argument and find that the vocational expert's testimony conflicts with the DOT, the Court must presume that table workers cannot control conveyor belt speeds. If this presumption is correct, then the Court must also presume that the vocational expert was either unaware that (1) the definition of table worker referred to "conveyor" and/or (2) unaware that table workers cannot control conveyor belt speeds. Nothing in the record supports the undersigned making these presumptions in order to find a conflict exists between the vocational expert's testimony and the DOT, considering that the ALJ asked the vocational expert whether her testimony conflicted with the DOT and the vocational expert testified it did not.

Plaintiff also points to the DOT definition of "machine tender", which states that the worker must "record number of [textile] bags processed." DICOT 689.585-018 (G.P.O.), 1991 WL

678364. Plaintiff presumes that because the worker must record the number of bags processed, then there must be a quota for machine tenders to meet and argues that such a requirement conflicts with the expert's testimony that a "machine tender" is not required to meet a rigorous production pace. In a similar argument, Plaintiff refers to the DOT definition for hand assembler and argues that it "seems" that hand assemblers are paid based on the number of pieces they assemble, even though the DOT's definition makes no reference to any type of quota or production standard. DICOT 734.687-074 (G.P.O.), 1991 WL 679964. These arguments require the Court to assume additional language in the DOT definitions and simultaneously speculate that the vocational expert was wrong when she testified that the DOT does not address production pace. This matter cannot be remanded based on assumptions and speculation.

**Conclusion**

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for DIB and SSI is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: September 28, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**